<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SHAWN JAMES ALLEN WOODALL            :
                                      :     Civil Action No. 05-1542 (FLW)
             Petitioner,             :
                                      :
        v.                           :     **OPINION**
                                      :
FEDERAL BUREAU OF PRISONS,           :
 et al.,                             :
                                      :
             Respondents.            :


**APPEARANCES:**

        SHAWN JAMES ALLEN WOODALL, Petitioner <u>pro se</u>
        #57984-198
        F.C.I. Fort Dix
        P.O. Box 2000
        Fort Dix, NJ 08640

**WOLFSON**, District Judge

        Petitioner, Shawn James Allen Woodall ("Woodall"), a

prisoner currently confined at the Federal Correctional

Institution at Fort Dix Camp ("FCI Fort Dix Camp"), New Jersey,

has submitted a petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2241.[1]   The Respondents are John Nash as Warden at

_____

        [1] Section 2241 provides in relevant part:

        (a) Writs of habeas corpus may be granted by the
        Supreme Court, any justice thereof, the district courts
        and any circuit judge within their respective
        jurisdictions.
        (c) The writ of habeas corpus shall not extend to a
        prisoner unless-- ... (3) He is in custody in violation
        of the Constitution or laws or treaties of the United
        States ... .

FCI Fort Dix, the Federal Bureau of Prisons ("BOP"), and BOP
Director Harley G. Lappin.

Because it appears from a review of the Petition that
Petitioner is not entitled to issuance of the writ, the Court
will dismiss the Petition.  See 28 U.S.C. § 2243.

## I.   RELEVANT STATUTES AND BOP POLICY

Under federal law, the Bureau of Prisons ("BOP") is
authorized to designate the place of imprisonment of federal
prisoners.

> (a) Commitment to Custody of Bureau of Prisons. - A
> person who has been sentenced to a term of imprisonment
> ... shall be committed to the custody of the Bureau of
> Prisons until the expiration of the term imposed, or
> until earlier released for satisfactory behavior
> pursuant to the provisions of section 3624.

> (b) Place of imprisonment. - The Bureau of Prisons
> shall designate the place of the prisoner's
> imprisonment.  The Bureau may designate any available
> penal or correctional facility that meets minimum
> standards of health and habitability established by the
> Bureau, whether maintained by the Federal Government or
> otherwise ... that the Bureau determines to be
> appropriate and suitable ... .  The Bureau may at any
> time ... direct the transfer of a prisoner from one
> penal or correctional facility to another.

18 U.S.C. § 3621(b).

Federal law provides for prisoners to serve the last portion
of their imprisonment under conditions that will facilitate their
transition from prison life to the community.

> (c) Pre-release custody. - The Bureau of Prisons,
> shall, to the extent practicable, assure that a
> prisoner serving a term of imprisonment spends a
> reasonable part, not to exceed six months, of the last

2

> 10 per centum of the term to be served under conditions
> that will afford the prisoner a reasonable opportunity
> to adjust to and prepare for the prisoner's re-entry
> into the community.  The authority provided by this
> subsection may be used to place a prisoner in home
> confinement.  The United States Probation System shall,
> to the extent practicable, offer assistance to a
> prisoner during such pre-release custody.

18 U.S.C. § 3624(c).

On December 13, 2002, the Office of Legal Counsel of the
United States Department of Justice prepared a Memorandum Opinion
for Deputy Attorney General Larry D. Thompson on the question
"whether the BOP has general authority, either upon the
recommendation of the sentencing judge or otherwise, to place [a
federal offender whom the BOP deems to be low-risk and nonviolent
and who has received a short sentence of imprisonment] directly
in community confinement at the outset of his sentence or to
transfer him from prison to community confinement during the
course of his sentence."

The Office of Legal Counsel ("OLC") began its analysis with
a review of Federal Sentencing Guidelines provisions addressing
imprisonment and community confinement and federal court opinions
concluding that community confinement does not constitute
"imprisonment" for purposes of these Sentencing Guidelines
provisions.  The OLC progressed from this analysis to a
determination that a community corrections center ("CCC") can not
constitute a "penal or correctional facility" that may serve as a
place of imprisonment within the meaning of § 3621(b).  If a CCC

3

were considered a place of imprisonment within the meaning of § 3621(b), the OLC reasoned, "then the time limitation in section 3624(c) on BOP authority to transfer a prisoner to a non-prison site – i.e., for a period, not to exceed six months, of the last 10% of the term of his sentence – would be rendered null with respect to community confinement."  The OLC concluded that the practice, pursuant to the BOP's interpretation of § 3621(b), of placing certain prisoners in CCC for a period longer than that mandated by the specific language of § 3624(c) was not lawful.

Based upon this OLC Memorandum Opinion, on December 16, 2002, Deputy Attorney General Larry D. Thompson sent a Memorandum to BOP Director Kathleen Hawk Sawyer advising her the that BOP's prior interpretation of § 3621(b) as including CCCs is unlawful and directing the BOP to cease placement of federal prisoners in CCCs except for the lesser of six months or ten percent of the sentence imposed on the offender.

On December 20, 2002, the BOP adopted the OLC legal opinion in a memorandum mandating that "Pre-release programming CCC designations are limited in duration to the last 10% of the prison sentence, not to exceed six months."  This "ten-percent rule" represented a reversal of long-standing BOP policy to consider prisoners for pre-release CCC placement for up to the final six months of their sentences (the "six-months rule"), regardless of the total term of imprisonment.  See, e.g., Schorr

4

v. Menifee, 2004 WL 1320898, *2 (S.D.N.Y. June 14, 2004) (and
cases cited therein).  The new ten-percent rule was instituted
without notice to the public and is not reflected in any BOP
Program Statement.  The new ten-percent rule thereafter generated
a wave of litigation from federal prisoners seeking its
invalidation on various grounds.  Id. at *3 (collecting cases).

     The majority of district courts had ruled that the December
2002 BOP policy was unlawful because it was based on an unlawful
interpretation of the governing statutes, since it failed to
recognize that 18 U.S.C. § 3621(b) gave the BOP discretion to
place federal inmates in CCCs at any time during their prison
term.  See Wiesel v. Menifee, No. 04 Civ. 9681, 2005 WL 1036297
(S.D.N.Y. May 2, 2005).  In addition, the only two circuit courts
to have addressed the merits of December 2002 policy change both
invalidated the new policy on the ground that the BOP's
interpretation of the statutes is erroneous.  See Elwood v.
Jeter, 386 F.3d 842, 846-47 (8th Cir. 2004)(holding that the BOP
had discretion to transfer inmates to community confinement at
any time during their incarceration); Goldings v. Winn, 383 F.3d
17, 23-27 (1st Cir. 2004)(holding that § 3624(c) does not
prohibit the BOP from transferring prisoners to a CCC before the
last 10% of their prison terms, and that § 3621(b) confers the
discretionary authority upon the BOP to execute such transfers).

The Third Circuit has not addressed the merits of the December 2002 policy change.

In earlier decisions, this Court has ruled that, to the extent the December 2002 policy change failed to recognize the BOP's discretionary authority under § 3621(b) to transfer inmates to CCCs at any time during their prison terms, it was unlawful. However, the Court further opined that while the BOP may have such discretion to transfer inmates to a CCC at any time, the statute does not confer on prisoners a right to that consideration prior to his ten percent date.  Moreover, the Court found that the specific limitation of authority as mandated by § 3624(c) (the "ten percent rule") does not conflict with the general authority given under § 3621(b) with respect to CCC placement at any time for non-transitional purposes.  The BOP retains its authority to review and place a prisoner in a CCC at any time during the custodial sentence for general administrative reasons and non-transitional programs.  See Liggett v. Nash, Civil No. 04-4713(FLW)(D.N.J. Oct. 20, 2004).

This construction of the two statutes does not render any terms in either statute meaningless and further comports with the canon that "the specific governs the general."  Cf. Elwood v. Jeter, 386 F.3d at 847 (Riley, J., dissenting).

Shortly before this petition was filed, the BOP finalized an amendment to 28 C.F.R. Part 570.[2]  Effective February 14, 2005, 28 C.F.R. § 570.20 provides:

> (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement.  The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
> (b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC)(also known as "halfway houses") and home confinement.

A companion rule, 28 C.F.R. § 570.21, provides:

> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.  (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. §

---

[2]  In response to the spate of litigation engendered by the December 2002 policy change, and the successful challenges to the policy change, the BOP proposed regulations governing the designation of inmates to CCCs.  See Community Confinement, 69 Fed.Reg. 51,213 (Aug. 18, 2004).  The BOP stated, "Because various courts have held that the Bureau has discretion under 18 U.S.C. § 3621(b) to place offenders sentenced to a term of imprisonment in CCCs, the Bureau considers it prudent to determine how to exercise such discretion."  Id. at 51,213.  The proposed rule states that the BOP would "exercise its discretion categorically to limit inmates' community confinement to the last ten percent of the prison sentence being served, not to exceed six months."  Id.  After a period for notice to and comments from the public, the BOP published the final rule on January 10, 2005.  See Community Confinement, 70 Fed.Reg 1659 (Jan. 10, 2005)(codified at 28 C.F.R. §§ 570.20-.21).  The policy thereafter became effective on February 14, 2005.  See id. at 1669.

3621(e)(2)(A)), or shock incarceration program (18 U.S.C. § 4046(c))).

Here, Woodall asserts that the new regulations promulgated by the BOP are contrary to the express intent of Congress, and violate the Ex Post Facto Clause and the Due Process and Equal Protection Clauses of the Fifth Amendment.  He seeks an order directing Respondents to consider his eligibility for pre-release transfer to a CCC pursuant to the BOP policy as it existed prior to December 2002, and to refer him for CCC placement six months before his projected release date.

## II.  BACKGROUND

Petitioner Woodall is presently confined at the FCI in Fort Dix, New Jersey.  He was convicted after a jury trial for alien smuggling in the United States District Court for the Southern District of California, and on December 15, 2000, was sentenced to 37 months in prison with three years supervised release.  On September 30, 2002, after a guilty plea to an escape charge, Woodall was sentenced to six months in prison and three years supervised release, to run consecutive to his 2000 conviction and sentence.  Woodall was released from prison on March 26, 2004 to serve his three-year supervised release term.

However, on April 7, 2004, after only 12 days on supervised release, petitioner was arrested by the California state police

for possession of a controlled substance.[3]  On September 7, 2004, the federal district court in the Southern District of California revoked Woodall's supervised release with respect to the 2000 conviction and ordered that petitioner serve 18 months in prison with no supervised release to follow.  On September 8, 2004, Woodall's supervised release was revoked with respect to his 2002 conviction, and he was ordered to serve 12 months in prison consecutive to the 18-month term.

At his revocation hearing, Woodall complained that he had been released by the BOP after 47 months in prison without any money, clothing, or halfway house placement in violation of the BOP's statutory duty under 18 U.S.C. § 3624(d).  Thus, Woodall alleges he was released on the streets without support and was forced to sleep on the sidewalks, which contributed to his violations on supervised release.  Petitioner contends that the United States District Court for the Southern District of California gave him a sentence below guidelines range for the supervised release violations based on petitioner's situation upon release.

Woodall next alleges that, on February 3, 2005, the Honorable Thomas J. Whelan, U.S.D.J., of the Southern District of California, granted petitioner's motion to amend the judgment,

---

[3]  Woodall states that the California state court vacated and expunged his arrest on or about October 21, 2004.

with the concurrence of the Assistant U.S. Attorney assigned to the case, and recommended halfway house placement for the last six months of petitioner's sentence.  On February 14, 2005, Woodall was informed by the Unit Manager at FCI Fort Dix, Mr. Whritenour, that Woodall's community placement would be subject to the 10% limitation pursuant to the new regulation, 28 C.F.R. § 570.21, which became effective on February 14, 2005.  This decision was allegedly made by the BOP without regard to the district court's recommendation of a six month community placement.

Woodall states that his projected statutory release date is April 3, 2006.  His pre-release or transitional release date to a halfway house or CCC has been determined by the respondents to be January 15, 2006.  Woodall contends that he should have the benefit of the full six months CCC placement, as recommended by the district court, which date would be in September 2005.  He argues that the new regulation should not be applied retroactively and that it is contrary to the express intent of Congress, in violation of the Equal Protection and Due Process Clauses of the Fifth Amendment.

III.  <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

United States Code Title 28, Section 2243 provides in relevant part as follows:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith

10

award the writ or issue an order directing the
respondent to show cause why the writ should not be
granted, unless it appears from the application that
the applicant or person detained is not entitled
thereto.

A pro se pleading is held to less stringent standards than
more formal pleadings drafted by lawyers.  <u>Estelle v. Gamble</u>, 429
U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).
A pro se habeas petition and any supporting submissions must be
construed liberally and with a measure of tolerance.  <u>See</u> <u>Royce
v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney
General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v.
Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399
U.S. 912 (1970).  Nevertheless, a federal district court can
dismiss a habeas corpus petition if it appears from the face of
the petition that the petitioner is not entitled to relief.  <u>See
Lonchar v. Thomas</u>, 517 U.S. 314, 320 (1996); <u>Siers v. Ryan</u>, 773
F.2d 37, 45 (3d Cir. 1985), <u>cert. denied</u>, 490 U.S. 1025 (1989).
<u>See also</u> 28 U.S.C. §§ 2243, 2255.

IV.   <u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>

Woodall states that he has attempted to exhaust his
administrative remedies by submitting a Request for
Administrative Remedy Form BP-9, which is the first level of a
three-tiered administrative remedy program established by the

11

BOP.[4]  However, he also argues that further exhaustion of his
administrative remedies in this instance would be futile.

Woodall filed a request for administrative remedy on
February 14, 2005.  In his request form, petitioner wrote that he
was appealing the retroactive application of the new regulation,
28 C.F.R. § 570.21, to him.  The BOP responded on March 4, 2005,
denying Woodall's request for six months of CCC placement before
his projected release date.  The denial was based on the BOP
Program Statement 7310.04, which states: "The Bureau of Prisons
shall, to the extent practicable, assure that a prisoner serving
a term of imprisonment spends a reasonable part, not to exceed
six months, of the last ten percent of the term to be served
under conditions that will afford the prisoner a reasonable

---

[4] The BOP Administrative Remedy Program is a three-tier
process that is available to inmates confined in institutions
operated by the BOP for "review of an issue which relates to any
aspect of their confinement."  28 C.F.R. § 542.10.  An inmate
must initially attempt to informally resolve the issue with
institutional staff.  28 C.F.R. § 542.13(a).  If informal
resolution fails or is waived, an inmate may submit a BP-9
Request to "the institution staff member designated to receive
such Requests (ordinarily a correctional counsel)" within 20 days
of the date on which the basis for the Request occurred, or
within any extension permitted.  28 C.F.R. § 542.14.  An inmate
who is dissatisfied with the Warden's response to his BP-9
Request may submit a BP-10 Appeal to the Regional Director of the
BOP within 20 days of the date the Warden signed the response.
28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's
General Counsel on a BP-11 form within 30 days of the day the
Regional Director signed the response.  Id.  Appeal to the
General Counsel is the final administrative appeal.  Id.

opportunity to adjust to and prepare for the prisoner's reentry into the community."

Woodall did not seek further administrative remedy. Instead, he filed this petition for habeas relief and for mandamus relief.[5]  He contends that exhaustion of his administrative remedies would be futile.

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v.

---

[5]  The Court finds that Woodall is not entitled to issuance of a writ of mandamus under 28 U.S.C. § 1361.  To be eligible for mandamus relief, a petitioner must establish (1) that he has a clear right to relief, (2) that the respondent's duty to perform the act in question is plainly defined and peremptory, and (3) that he has no other adequate remedy.  See Rios v. Ziglar, 398 F.3d 1201 (10th Cir. 2005).  See also Cheney v. U.S. Dist. Court for the Dist. Of Columbia, 124 S. Ct. 2576, 2593-94 (2004)("Mandamus is an extraordinary remedy, available to 'a plaintiff only if ... the defendant owes him a clear, non-discretionary duty.'")(citing Heckler v. Ringer, 466 U.S. 602 (1984)).  Woodall has not established any of these requirements.  As set forth in this Opinion, infra, there is no clear right to relief and respondent's duty in this instance is discretionary, not peremptory.  Finally, Woodall has adequate access to relief through his petition under § 2241, even though ultimately, he is not entitled to the relief he seeks.  Therefore, the writ of mandamus is denied.

13

Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion

doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a
> factual record and apply its expertise facilitates
> judicial review; (2) permitting agencies to grant the
> relief requested conserves judicial resources; and (3)
> providing agencies the opportunity to correct their own
> errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd,

248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau

of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless,

exhaustion of administrative remedies is not required where

exhaustion would not promote these goals.  See, e.g., Gambino v.

Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required

where petitioner demonstrates futility); Lyons v. U.S. Marshals,

840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where

it "would be futile, if the actions of the agency clearly and

unambiguously violate statutory or constitutional rights, or if

the administrative procedure is clearly shown to be inadequate to

prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959,

*2 (E.D. Pa. 2000) (exhaustion not required where delay would

subject petitioner to "irreparable injury").

Here, it does not appear that there is any need to develop a

factual record.  Nor does this matter require application of the

agency's particular expertise.  Woodall does not challenge the

application of the BOP's ten-percent rule to him, but challenges

whether the ten-percent rule legally implements the statute

pursuant to which it was promulgated.  This is a question within the expertise of courts.  See <u>Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 843 n.9 (1984) ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.").  Accordingly, the purposes of the exhaustion requirement would not be served by requiring Woodall to exhaust his administrative remedies, and this Court will proceed to determine Woodall's claim on the merits.

V.  <u>ANALYSIS</u>

A.  <u>The New Regulations Are Entitled to Heightened Deference</u>

Preliminarily, this Court must determine the level of deference to be accorded the new BOP regulations.  An agency's rules are entitled to a level of deference measured under one of two standards.  First, a heightened deference is reserved for legislative rules that an agency issues within the scope of authority granted to it by Congress.  See <u>United States v. Mead Corp.</u>, 533 U.S. 218, 227 (2001); <u>Chevron</u>, 467 U.S. at 842-43 n.9 (where "Congress has directly spoken to the precise question at issue," so that the "intent of Congress is clear," both courts and administrative agencies are bound by Congress's command).  These rules are typically promulgated only after a notice and comment period.  <u>Mead</u>, 533 U.S. at 227.  Lesser deference is

15

accorded to interpretive rules, which, although entitled to respect, will be supported only if persuasive.  Id. at 232; see also Chevron, 467 U.S. at 843-45 (where the statutory language is silent or ambiguous on the specific issue, deference is accorded the agency's interpretation so long as it is based on a permissive construction of the statute).  Here, the new BOP regulations, which became effective on February 14, 2005, are entitled to a heightened level of deference.[6]  However, the ultimate determination of the meaning of a statute is for the courts to resolve.  Downey v. Crabtree, 100 F.3d 662, 666 (9th Cir. 1996).  For the reasons stated below, the Court concludes that the new regulations are valid and constitute a permissive construction of the relevant statutes, 18 U.S.C. §§ 3621(b) and 3624(c).

---

[6]  The new regulation or February 2005 policy was promulgated in compliance with the notice and comment rulemaking procedures required by the Administrative Procedure Act ("APA").  See Proposed Rule, 69 Fed.Reg. At 51,213 (giving notice of and requesting comments on the proposed rule); February 2005 Policy, 70 Fed.Reg. At 1659 (responding to comments on the proposed rule and adopting final rule); see also Moss v. Apker, __ F. Supp.2d __, 05 Civ. 2676 (VM), 2005 WL 1593016 (S.D.N.Y. July 6, 2005)(finding implementation of February 2005 Policy in compliance with APA procedures); Levine v. Menifee, 05 Civ.1902 (RCC), 2005 WL 1384021 (S.D.N.Y. June 9, 2005)(same); Pimental v. Gonzalez, 367 F. Supp.2d 365, 372 (S.D.N.Y. 2005).

B.  <u>BOP Policy Reasonably Interprets § 3621(b) and § 3624(c)</u>

    1.  *The December 2002 Policy*

    In this case, Woodall relies on recent decisions in the District of New Jersey, namely, <u>Cestaro, et al. V. DeRosa, et al.</u>, Civil No. 04-792 (RBK); <u>Comyns v. Miner, et al.</u>, Civil No. 04-3547 (RBK); and <u>Scott v. Federal Bureau of Prisons</u>, 317 F. Supp.2d 529 (D.N.J., 2004)(JEI).  These cases, which construed the December 2002 policy, held that a CCC is a place of imprisonment under 18 U.S.C. § 3621(b) and the new BOP policy illegally constrains the BOP's discretion under § 3621(b) to designate a CCC as the place of an inmate's imprisonment.

    On October 4, 2004, this Court considered another case raising similar arguments as presented by petitioner herein.  In <u>Trudeau v. Nash</u>, Civil No. 04-4434 (FLW), this Court found that, notwithstanding the OLC memorandum, the Respondent has the discretion, pursuant to 18 U.S.C. § 3621(b) to review and place the petitioner in a CCC at any time during petitioner's custodial sentence.  Further, this Court stated that the Respondent has the authority, if he chooses in his discretion to exercise it, to review an inmate for possible transfer to and placement in a CCC pursuant to 18 U.S.C. § 3621(b) at any time for any reason, in addition to the transitional purposes specified in 18 U.S.C. § 3624(c).  However, any transfer of the petitioner to community confinement for transitional purposes pursuant to 18 U.S.C. §

3624(c), shall be subject to the 10% durational limitation as set forth in that statutory provision.

In reaching its determination, this Court rejected its prior conclusion that a CCC is not a "penal or correctional facility" that may serve as a place of imprisonment within the meaning of § 3621(b),[7] and found that that conclusion was not supported in the legislative history of the enabling statute itself.  See Liggett v. Nash, Civil No. 04-4713 (FLW)(D.N.J. October 20, 2004).[8]

---

[7] This Court has previously entered several opinions on the subject of the validity of the new ten-percent rule.  See Porcaro v. U.S. Bureau of Prisons, Civil No. 03-2377(FLW) (D.N.J. Dec. 12, 2003); Sutton v. DeRosa, Civil No. 04-1010(FLW) (D.N.J. April 30, 2004); Norrito v. DeRosa, Civil No. 04-610 (FLW) (D.N.J. Aug. 12, 2004); McCarrin v. Miner, 04-2741 (FLW) (D.N.J. Aug. 25, 2004).  In a recent opinion issued by the Court in Liggett v. Nash, Civil No. 04-4713 (FLW)(D.N.J. October 20, 2004), the Court revisited the issue in light of the recent federal appellate court opinions on point, see Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004).

[8] In Liggett, this Court held:

"Before 1987, the Attorney General had statutory authority to designate the place of an inmate's imprisonment.  18 U.S.C. § 4082(a)(1982).  The enabling legislation expressly stated that inmates serving a term of imprisonment could be designated to a 'residential community treatment center.' 18 U.S.C. § 4082(f)(1982).  Thus, pursuant to this authority, the Attorney General commonly designated inmates to CCCs.

On November 1, 1987, Congress transferred designation authority from the Attorney General to the BOP. Pub.L. 98-473, Title II, § 212(a)(2); 98 Stat. 2007.  Although the revised statute did not expressly cite community confinement as a place of imprisonment, such omission is not conclusive or absolute evidence that the BOP inherited less discretionary authority than the Attorney General.  Indeed, the legislative history clearly states that the BOP has the same discretion as its predecessor.  See 1984 U.S.C.C.A.N.

Accordingly, this Court held that the BOP's change in practice in 2002, as set forth in the OLC Memorandum, was based on an erroneous interpretation of § 3621(b), namely, that it mistakenly concludes that the BOP lacks discretion to review and place a federal prisoner in a CCC at any time for any reason during his custodial sentence.  Thus, the OLC's interpretation as set forth in the December 2002 policy was incompatible with the broad grant of authority under § 3621(b).

This Court also rejected the OLC's position that this broad construction of § 3621(b) would render the 10% time limitation imposed by § 3624(c), which is not to exceed six months, meaningless if CCCs are considered a penal or correctional facility.  Sections 3621(b) and 3624(c) are easily harmonized and any inconsistency between them can be reconciled by applying two canons of statutory construction.  Namely, that "courts must give effect, if possible, to every clause and word of a statute," Williams v. Taylor, 529 U.S. 362, 404 (2000), and that "the specific governs over the general," Varity Corp. V. Howe, 516 U.S. 489, 511 (1996).  See Skelskey v. DeBoo, 332 F. Supp.2d 485, 489 (D.Conn. 2004) (alternate holding); Cohn v. The Federal

_____

3182, 3324; Barden v. Keohane, 921 F.2d 476, 481 (3d Cir. 1990)(noting that the amendment 'was not intended to change pre-existing law with respect to the authority of the Bureau').  Thus, from 1987 until 2002, the BOP continued the Attorney General's practice of designating prisoners to CCCs."

Bureau of Prisons, 302 F. Supp.2d 267, 273 (S.D.N.Y. 2004)
(alternate holding); Adler v. Menifee, 293 F. Supp.2d 363
(S.D.N.Y. 2003).

Section 3624(c) specifically mandates the BOP, to the extent
practicable, to allow an inmate to spend the lesser of six months
or the last 10% of his prison sentence "under conditions that
will afford the prisoner a reasonable opportunity to adjust to
and prepare for the re-entry into the community." See, e.g.,
Loeffler v. Menifee, 326 F. Supp.2d 454 (S.D.N.Y. 2004); Cohn,
302 F. Supp.2d at 271; Adler, 293 F. Supp.2d at 367-69. Toward
this end, § 3624(c) allows home confinement as part of this
prerelease custody. However, nothing in § 3624(c) compels pre-
release confinement in a CCC. The statute requires only that
pre-release custody "be served under conditions that will afford
the prisoner a reasonable opportunity to adjust to and prepare
for the prisoner's re-entry into the community." Thus, under §
3624(c), transitional pre-release custody need not take the form
of CCC placement. See, e.g., Prows v. Federal Bureau of Prisons,
981 F.2d 466 (10th Cir. 1992), cert. denied, 510 U.S. 830 (1993);
United States v. Laughlin, 933 F.2d 786 (9th Cir. 1991); Gambino
v. Gerlinski, 96 F. Supp.2d 456 (M.D. Pa.), aff'd, 216 F.3d 1075

(3d Cir. 2000).  <u>See also</u> BOP Program Statement 5325.06 "Release Preparation Program".[9]

Therefore, this Court found that, if the transfer of a prisoner is for transitional purposes only pursuant to § 3624(c), the BOP is correct to interpret that its authority under § 3624(c) for a transitional transfer is limited to 10% of an inmate's sentence, not to exceed six months.  This specific limitation of authority as mandated by § 3624(c) does not conflict with the general authority given under § 3621(b) with respect to CCC placement at any time for non-transitional purposes.  The BOP retains its authority to review and place a prisoner in a CCC at any time during the custodial sentence for general administrative reasons and non-transitional programs.

This construction of the two statutes also does not render any terms in either statute meaningless and further comports with the canon that "the specific governs the general."  <u>Cf</u>. <u>Elwood v. Jeter</u>, 386 F.3d at 847 (Riley, J., dissenting).

Accordingly, even if Woodall's CCC placement was considered under the December 2002 policy, this Court would hold that any transfer of Woodall to a CCC for transitional purposes pursuant to 18 U.S.C. § 3624(c), must be subject to the 10% durational

_____

[9]  However, as a matter of policy, the BOP has chosen to implement its statutory obligation through a program of CCC placement for all "eligible" prisoners.  <u>See</u> BOP Program Statement 7310.04 "CCC Utilization and Transfer Procedure."

limitation as set forth therein.  <u>See</u> <u>Cohn</u>, 302 F. Supp.2d at 271
("under a plain reading of § 3624(c), the BOP's back end
placement of an inmate in a CCC prior to the end of an inmate's
sentence is expressly and unambiguously limited to a 'reasonable
part, not to exceed six months, of the last 10 per centum of the
term to be served'").

Moreover, to the extent that Woodall seems to be challenging
the application of the December 2002 Policy to his requested
transfer to a CCC six months before his projected release date,
that challenge is moot.[10]  The February 2005 Policy supercedes
the December 2002 Policy; thus, Woodall cannot assert that the
application of the December 2002 Policy to his transfer request
is affecting his rights.  <u>See</u> <u>Princeton University v. Schmid</u>, 455
U.S. 100, 103 (1982)(per curiam)(holding that where a challenged
regulation is superceded by a new regulation, "the issue of the
validity of the old regulation is moot, for this case has 'lost
its character as a present, live controversy of the kind that
must exist if we are to avoid advisory opinions on abstract
questions of law.'")(<i>quoting</i> <u>Hall v. Beals</u>, 396 U.S. 45, 48
(1969)(per curiam)).

_____

[10]  Woodall appears to be challenging the December 2002
policy in part because he relies on several cases decided in this
district that invalidated the December 2002 policy as an
unreasonable interpretation of § 3621(b).

2.  *The February 2005 Policy*

In his petition, Woodall expressly challenges the application of the February 2005 policy to his requested transfer on the grounds that (a) it is contrary to the express intent of Congress; (b) it violates the Due Process Clause of the Fifth Amendment; (c) it violates the Equal Protection Clause; and (d) it violates the Ex Post Facto Clause.

a.  The policy reasonably interprets § 3621(b)

In essence, Woodall contends that the new policy is in conflict with the express mandate of 18 U.S.C. § 3621(b), which plainly gives the BOP the discretion to transfer an inmate to a CCC at anytime during his prison term.  Woodall complains that although the BOP has the authority to transfer Woodall to a CCC six months before his projected release date, the BOP categorically declines to exercise its discretion pursuant to the new policy.  This Court rejects Woodall's argument and finds that new policy reasonably interprets § 3621(b).

Congress explicitly delegated discretion to the BOP to "designat[e] the place of imprisonment or mak[e] transfers" 18 U.S.C. § 3621(b).  Section 3621(b) commits the BOP with the authority to "designate any available penal or correctional facility that meets minimum standards of health and habitability established by the [BOP] ... that the [BOP] determines to be appropriate and suitable.  Id.  To aid the BOP's discretionary

23

authority, § 3621(b) sets forth five factors for the BOP to consider in making initial placement or transfer determinations under the statute.  18 U.S.C. § 3621(b)(1)-(5).

These five statutory factors were considered by the BOP when developing the new February 2005 policy.  See Proposed Rule, 69 Fed.Reg. at 51,214 ("In deciding to limit inmates' community confinement to the last ten percent of the prison sentence, not to exceed six months, the Bureau has carefully considered all of the statutorily-specified factors, as well as the additional consideration that it identified as pertinent").  Thus, any contention that the new regulations neglect the § 3621(b) factors unreasonably is not sustained by the BOP's express proposals in formulating the new policy.  See Moss v. Apker, __ F. Supp.2d __, 2005 WL 1593016, *7 (S.D.N.Y. July 6, 2005)(disagreeing with Drew v. Menifee, No. 04-9944, 2005 WL 525449 (S.D.N.Y. Mar. 4, 2005) and Wiesel v. Menifee, 04 Civ. 9681, 2005 WL 1036297 (S.D.N.Y. May 2, 2005)).  Moreover, although the new policy may limit a prisoner's access to early CCC placement, it also expressly states that the BOP will continue to take into account all five statutory factors when designating or transferring federal prisoners to correctional facilities, including CCCs.  See February 2005 Policy, 70 Fed.Reg. at 1660 ("The Bureau will continue to evaluate [the factors enumerated in § 3621(b)] when making individual designations to appropriate Bureau facilities,

and this rule will not adversely affect such individualized determinations").

Furthermore, there is nothing in § 3621(b) that regulates the weight that the BOP must give to each of the five statutory factors, even if § 3621(b) was interpreted to require the BOP to accord some weight to each factor.  Nothing in § 3621(b) prohibits the BOP from considering the additional factors identified as relevant in developing the February 2005 policy. In fact, some of these new factors are specifically referenced by statute, so there is no basis to conclude that the February 2005 policy interprets § 3621(b) unreasonably.  See Proposed Rule, 69 Fed.Reg. at 51,214 (for instance, the desire to avoid favoritism in making designation decisions is referenced in § 3621(b)("There shall be no favoritism given to prisoners of high social or economic status")).  Finally, nothing in § 3621(b) requires the BOP to consider transferring any federal prisoner in its custody before the transitional point set forth in 18 U.S.C. § 3624(c).

Thus, this Court concludes that the February 2005 policy represents a reasonable interpretation of § 3621(b).  Finally, the Court concludes that Congress did not express a clear intent to limit the BOP's authority to regulate its discretion under § 3621(b) by adopting categorical rules such as the February 2005 policy, even though § 3621(b) provides for individualized determinations.  See Lopez v. Davis, 531 U.S. 230, 243-244

(2001)("even if a statutory scheme requires individualized determinations ... the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority")(internal quotation marks omitted)(*quoting* <u>American Hospital Assn. V. NLRB</u>, 499 U.S. 606, 612 (1991)).

In <u>Lopez</u>, the Supreme Court rejected a challenge to the BOP's categorical rule excluding certain inmates from a discretionary early release program.  This Court finds no significant distinction between the situation in <u>Lopez</u> and the issue in this case.  Here, the BOP has identified a category of inmates – those who have not reached their 10% date for transitional CCC placement under § 3624(c), but may be eligible under § 3621(b) – and created a rule denying CCC transfers to all of them.  As shown above, this categorical rule does not conflict with an identified directive of Congress.  <u>See</u> <u>Yip v. Federal Bureau of Prisons</u>, 363 F. Supp.2d 548, 552 (S.D.N.Y. 2005); <u>Moss</u>, 2005 WL 1593016 at *6.  Thus, this Court concludes that the February 2005 policy is a lawful exercise of the BOP's discretion under § 3621(b), and Woodall's challenge to the new policy as contrary to the intent of Congress is rejected.[11]

---

[11] The Court notes that the February 2005 rule has been invalidated by some district courts in the Second and Ninth Circuits.  <u>See</u>, <u>e.g.</u>, <u>Wiederhorn v. Gonzales</u>, No. 05-360, 2005 WL 1113833 (D.Or. May 9, 2005); <u>Pimental v. Gonzalez</u>, 367 F. Supp.2d 365 (E.D.N.Y. 2005); <u>Paige v. United States</u>, 369 F. Supp.2d 1257

          b.  <u>Due Process claim</u>

     Woodall next contends that he has been denied due process as

guaranteed under the Fifth Amendment with respect to the BOP's

categorical denial of a six-month CCC placement.  However,

Woodall cannot make out a substantive due process claim under the

Fifth Amendment because substantive due process only attaches

when a fundamental right is at stake.  <u>See</u> <u>Rochin v. California</u>,

342 U.S. 165, 172-73 (1952); <u>Planned Parenthood v. Casey</u>, 505

U.S. 833, 846-48 (1992).  Preferred placement in a CCC or halfway

house does not rise to the level of a fundamental right.  <u>See</u>

<u>Smith v. United States</u>, 277 F. Supp.2d 100, 110 (D.D.C. 2003).

---

(D. Mont. 2005); <u>Cook v. Gonzales</u>, No. 05-09, 2005 WL 773956
(D.Or. April 5, 2005); <u>Drew v. Menifee</u>, No. 04-9944, 2005 WL
525449 (S.D.N.Y. Mar. 4, 2005).  But a fairly equal number of
cases (although limited to the Southern District of New York, but
different district judges) have ruled to the contrary, concluding
that the February 2005 policy is valid.  <u>See</u> <u>Troy v. Apker</u>, 05
Civ. 1306 (GEL), 2005 WL 1661101 (S.D.N.Y. June 30, 2005)(finding
that the BOP has the authority to categorically exercise its
discretion regarding CCC transfers and upholding the validity of
the February 2005 rule); <u>Moss</u>, 2005 WL 1593016 (same); <u>Yip</u>, 363
F. Supp.2d 548 (same); <u>Levine v. Menifee</u>, 05 Civ. 1902 (RCC),
2005 WL 1384021 (S.D.N.Y. June 9, 2005)(same); <u>Levine v. Apker</u>,
05 CV 3472 (CLB), 2005 WL 1417134 (S.D.N.Y. May 20, 2005)(finding
"no Constitutional infirmity in the exercise of categorical
discretion under the circumstances where the statute calls for
individualized consideration").  <u>See also</u> <u>Wiesel v. Menifee</u>, No.
04 Civ. 9681(DAB), 2005 WL 1036297 (S.D.N.Y. May 2,
2005)(upholding the February 2005 regulations, but finding their
application to petitioner, who was convicted prior to the policy
change, to be a violation of the <u>Ex</u> <u>Post</u> <u>Facto</u> Clause).  This
Court adopts the reasoning of those district judges that have
found the new regulations to be valid.

Furthermore, Woodall's Fifth Amendment due process rights are triggered by a deprivation of a legally cognizable liberty interest.  A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or duly enacted laws and regulations.  See Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).[12]

In general, an inmate does not have a liberty interest in assignment to a particular institution or to a particular security classification.  See Wilkinson v. Austin, 125 S.Ct. 2384, 2393 (2005)(the Constitution does not give rise to a liberty interest in avoiding transfers to more adverse conditions of confinement); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montayne v. Haymes, 427 U.S. 236, 243 (1976); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976)(noting that prison classification and eligibility for rehabilitative programs in the federal prison system are matters delegated by Congress to the "full discretion" of federal prison officials and thus implicate "no legitimate statutory or

---

[12]  See Gambino v. Gerlinski, 96 F. Supp.2d 456, 459 (M.D. Pa. 2000)(citing Hewitt, 459 U.S. at 471-72)(in order for a statute to confer a liberty interest it must be "explicitly mandatory" and provide for "specified substantive predicates" which dictate a substantive result), aff'd, 216 F.3d 1075 (3d Cir. 2000).  Here, Woodall does not claim that his right to CCC placement at six months before his projected release date is statutorily granted.  Rather, the applicable statute, 18 U.S.C. § 3624(c), actually provides that CCC custody may not exceed 10% of an inmate's total sentence, or six months, whichever is less.

constitutional entitlement sufficient to invoke due process").
See also Sandin v. Connor, 515 U.S. 472, 484-86 (1995)(holding
that a liberty interest is implicated only where the action
creates "atypical and significant hardship on the inmate in
relation to the ordinary incidents of prison life" or creates a
"major disruption in his environment"); Kentucky Dept. of
Corrections v. Thompson, 490 U.S. 454, 463 (1989)(holding that a
liberty interest arises only where a statute or regulation uses
"explicitly mandatory language" that instructs the decision-maker
to reach a specific result if certain criteria are met); Walker
v. Hughes, 558 F.2d 1247, 1252 (6th Cir. 1977)("Federal statutory
law gives federal prison officials full discretion in the
treatment of prisoners and does not restrict the authority of
prison officials over the inmates as to placement in more
restrictive living status, transfer to other prisons, subjection
to significant and adverse effects on parole dates, and
deprivation of privileges."); Sesler v. Pitzer, 926 F. Supp. 130
(D. Minn. 1996)(Congress has given the BOP broad power of
discretion in the area of sentence reductions in connection with
drug rehabilitation programs), aff'd, 110 F.3d 569 (8th Cir.),
cert. denied, 522 U.S. 877 (1997).

Pertinent to Woodall's due process claim, the Supreme Court
has held:

The initial decision to assign the convict to a particular
institution is not subject to audit under the Due Process

29

> Clause, although the degree of confinement in one prison may
> be quite different from that in another.  The conviction has
> sufficiently extinguished the defendant's liberty interest
> to empower the State to confine him in *any* of its prisons.
>
> Neither, in our view, does the Due Process Clause in and of
> itself protect a duly convicted prisoner against transfer
> from one institution to another within the state prison
> system.  Confinement in any of the State's institutions is
> within the normal limits or range of custody which the
> conviction has authorized the State to impose.

Meachum, 427 U.S. at 224-25 (emphasis in original).  Moreover,

the placement of prisoners within the federal prison system is

among the "wide spectrum of discretionary actions that

traditionally have been the business of prison administrators

rather than of the federal courts."  Id., 427 U.S. at 225.

Here, Woodall constructively seeks a declaration that he is

entitled to release to a CCC because the BOP's new policy

violates due process.  He contends that he is entitled to CCC

placement in September 2005 based on the BOP's policy and

practice before December 2002.  Woodall does not contend that he

has been subject to any extraordinary treatment that would

constitute "atypical and significant hardship" at prison.

Therefore, this Court finds that Woodall's custodial placement in

a CCC is a day-to-day prison management issue, subject to the

BOP's administrative discretion under 18 U.S.C. § 3621(b) as

interpreted by the new February 2005 policy, and limited only to

the extent mandated by 18 U.S.C. § 3624(c) with respect to

transitional placement.  Such custodial status does not

30

constitute an atypical or significant hardship on him in relation to the ordinary incidents of prison life. See <u>Sandin</u>, 515 U.S. at 484.

Moreover, this Court finds the fact that the BOP has the authority to consider an inmate for a CCC transfer does not confer on the inmate a right to that consideration before his 10% date under 18 U.S.C. § 3624(c). See <u>Yip</u>, 363 F. Supp.2d at 551-52; <u>Moss</u>, 2005 WL 1593016, *8; <u>Paloian v. Scibana</u>, No. 04-C-858-C, 2004 WL 3006559, *3 (W.D.Wis. Dec. 21, 2004). See <u>also</u> <u>Rodriguez v. Federal Bureau of Prisons</u>, 05 Civ. 3934 (GEL), 2005 WL 1164154, *1 (S.D.N.Y. May 16, 2005)(the court's prior order "did not purport to establish any entitlement on the part of petitioner to any particular designation; its effect is to restore discretion to the [BOP], not to impose judicial control over a decision best left to the sound expertise of the Bureau").

Consequently, Woodall cannot show any liberty interest in CCC placement, and therefore, because no liberty interest is at stake, he fails to state a denial of due process claim.

c.   <u>Equal Protection Clause</u>

Woodall also contends that the BOP's policy excluding him from six month transitional placement in a CCC, which was allegedly allowed before December 2002, violates the Equal Protection Clause.  The Equal Protection Clause protects prisoners from arbitrary discrimination.  <u>Turner v. Safley</u>, 482

31

U.S. 78, 84 (1987); Lee v. Washington, 390 U.S. 333 (1968).

Nevertheless, a court's review of prison policies and actions is

tempered by recognition that lawful incarceration necessarily

limits many privileges and rights and that courts are ill-

equipped to deal with many problems of prison administration.

O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49 (1987); Turner,

482 U.S. at 84-85 (1987).  Thus, an inmate's constitutional

rights are subject to restrictions that are "reasonably related

to legitimate penological interests."  Turner, 482 U.S. at 89.

To determine the constitutionality of a prison policy, a

court must weigh four factors:

> "First, there must be a 'valid, rational connection'
> between the prison regulation and the legitimate
> governmental interest put forward to justify it," and
> this connection must not be "so remote as to render the
> policy arbitrary or irrational."  Second, a court must
> consider whether inmates retain alternative means of
> exercising the circumscribed right.  Third, a court
> must take into account the costs that accommodating the
> right would impose on other inmates, guards, and prison
> resources generally.  And fourth, a court must consider
> whether there are alternatives to the regulation that
> "fully accommodate[] the prisoner's rights at de
> minimis cost to valid penological interests."

Waterman v. Farmer, 183 F.3d 208, 213 (3d Cir. 1999) (quoting

Turner, 482 U.S. at 89-91) (other internal citations omitted).

See also DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000).  This

analysis applies to inmate equal protection claims.  See DeHart,

227 F.3d at 61.

32

Given this standard, Woodall has failed to allege an equal protection claim.  Under the February 2005 policy, the BOP has identified a category of inmates, who are not yet required to be considered for CCC transitional placement under § 3624(c), and created a rule denying transfer to all of them.  There is no allegation of racial, ethnic, religious, or any other discrimination in effecting this policy.  The policy is reasonably related to a legitimate penological interest in the efficient administration, control, placement and transfer of the BOP's inmate population.  There is nothing to suggest that Woodall is being treated in a disparate manner from other similarly situated federal prisoners.  Thus, Woodall's equal protection claim fails as a matter of law and does not warrant invalidation of the February 2005 policy.[13]

---

[13]  To the extent there are other district court opinions contrary to the opinion of this Court, they are not binding on this Court.  See Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 430 n. 10 (1996).  Indeed, Woodall's equal protection claim seems to be based on the fact that other judges in this district have granted the relief he seeks in similar cases, and thus, he should receive the same consideration in CCC placement for the sake of uniformity.  However, this Court is not bound by the decisions of other judges within this district.  See Threadgill v. Armstrong World Industries, Inc., 928 F.2d 1366, 1371 (3d Cir. 1991)("there is no such thing as 'the law of the district.'  Even where the facts of a prior district court case are, for all practical purposes, the same as those presented to a different district court in the same district, the prior 'resolution of those claims does not bar reconsideration by this Court of similar contentions.  The doctrine of stare decisis does not compel one district court judge to follow the decision of another.'")(internal citations omitted).

    d.   <u>Ex Post Facto Clause</u>

Finally, petitioner argues that the new regulations violate the <u>Ex Post Facto</u> Clause.  This Court disagrees.

The Ex Post Facto Clause of the U.S. Constitution bars any "enactments, which by retroactive operation, increase the punishment for a crime <u>after its commission</u>."  <u>Garner v. Jones</u>, 529 U.S. 244, 249-50 (2000) (citations omitted) (emphasis added).  A changed agency policy can violate the Ex Post Facto Clause if it has the effect of changing substantive law.  <u>Chrysler Corp. v. Brown</u>, 441 U.S. 281, 301-03 (1979); <u>U.S. ex rel. Forman v. McCall</u>, 709 F.2d 852, 859-63 (3d Cir. 1983), <u>on appeal after remand</u>, 776 F.2d 1156, 1163-64 (3d Cir. 1985), <u>cert. denied</u>, 476 U.S. 1119 (1986); <u>Blair-Bey v. Quick</u>, 159 F.3d 591, 592 (D.C. Cir. 1998).

Here, the February 2005 policy was enacted after the commission of Woodall's offenses for which he is incarcerated.  However, it can hardly be argued that the change in policy amounts to an increased penalty because the new regulations do not have the purpose or effect of enhancing the penalty associated with Woodall's crime.  See <u>Cal. Dep't of Corr. V. Morales</u>, 514 U.S. 499, 510 n. 6 (1995); <u>Lee v. Governor of State of New York</u>, 87 F.3d 55, 59 (2d Cir. 1996); <u>Dominique v. Wald</u>, 73 F.3d 1156, 1162 n. 9 (1st Cir. 1996); <u>Moss</u>, 2005 WL 1593016 at *8; <u>Levine v. Menifee</u>, 2005 WL 1384021 at *7-9.  In <u>Lee v.</u>

Governor of State of New York, the Second Circuit held that a state statute and executive order retroactively limiting certain inmates' access to temporary release programs "does not constitute an increase in punishment.  Their evident purpose is not to add punishment, but rather to serve the regulatory purpose of limiting early community contact for those in the designated felony categories."  Lee, 87 F.3d at 59.  As illustrated above, the BOP's February 2005 policy also intends, at least in relevant part, to "serve the regulatory purpose of limiting early community contact" for those federal inmates sentenced to terms of imprisonment, rather than to enhance the punishment associated with individual crimes.  Accordingly, the policy "falls on the lawful side of the ex post facto line."  Id.; see also Moss, 2005 WL 1593016 at *8; Levine v. Menifee, 2005 WL 1384021 at *7-9.

CONCLUSION

For the reasons set forth above, the Court concludes that the new BOP regulations, effective February 14, 2005, providing for the BOP's categorical exercise of discretion in CCC transfers, are valid and do not violate the Due Process and Equal Protection Clauses of the Fifth Amendment, or the Ex Post Facto Clause.  Accordingly, Woodall's petition for habeas and mandamus relief shall be denied.  An appropriate order follows.

s/Freda L. Wolfson
Freda L. Wolfson
United States District Judge

Dated: July 20, 2005